Case number 24-5297. Joseph Paul Englehardt v. Yvonne Wade appellants Diana Campuzano v. Pamela Bondi and Rafael Capacity as Attorney General of the United States of America and United States Department of Justice. Ms. Berman for the appellants, Mr. Powell for the appellees. Good morning. Good morning, Your Honors. Amanda Berman for appellants Joseph Englehardt and Yvonne Wade, two of the more than 20,000 American victims of terrorist bombing seeking to fulfill judgments against state sponsors of terrorism for their injuries. Your Honors, I'd like to reserve two minutes for rebuttal. There are two equally simple reasons that all of the BAT proceeds must be deposited to the victim's fund. First, all of the BAT proceeds arise from conspiring with a state sponsor of terrorism, North Korea, when it was a state sponsor of terrorism. And second, even if they didn't, they are all penalties imposed for an IEPA conspiracy, and the text of the funding provision does not require such proceeds to arise from doing business with a state sponsor of terrorism. Turning to my first point, Your Honors, the government charged the BAT defendants with conspiring with North Korea to violate IEPA and commit bank fraud in order to sell tobacco products to the North Korean government. That conspiracy, according to the government itself, and it says this on page 10 of its brief, I direct the court to the information at Joint Appendix 73 to 75, that conspiracy was in place by 2007, no later than 2007. The Key Formation Acts took place in 2005 through 2007, when North Korea was a state sponsor of terrorism. So all of the BAT proceeds from that conspiracy thus arise from doing business with a state sponsor of terrorism under any normal interpretation of that broad phrase arising from. And I would point this court to its own definition of that phrase, this description of it, in Sela v. Titan Corp., where it said it's used to denote any causal connection. Or the Supreme Court's definition in the Merrill Lynch v. Manning case where it says, is it an ingredient? Here, doing business with North Korea was an integral ingredient of the BAT conspiracy and causally connected to all of the proceeds. Can I ask a clarification question? I think both sides of the case agree, but I want to confirm that in the list of, I guess, five possible things, IEPA, TWA, a related criminal conspiracy, scheme, and another federal offense. All the action here, the Bank Fraud Conspiracy and the IEPA Conspiracy, are in the third of those, any related criminal conspiracy. Yes, related conspiracy. We both agree with that. Okay, so then a new question. I've been trying to think of a kind of hypothetical to help me think through what arising from encompasses. How long it lasts, how long the conspiracy that arises from something lasts, because you're quite right, the conspiracy here began in 2007. And arising from sounds a lot like originating from, and I think you may have a winning argument here. If I started a fire and the fire spread from house to house to house to house, I think even 10 houses away, that fire arose from my starting the original fire. This is helpful to you.  But what if in order for the fire to spread to all 10 houses, I had to light it in the first house and then light it in the second, light it in the third, light it in the fourth. Then it seems like the second, third, fourth, all the way through 10th houses, those fires did not arise from the first fire. And here, the conspiracy would have ended in 2007 if the conspirators had not then sort of lit the new fire in 2008 and then lit another fire in 9 and 10, 11, all the way through the end of the conspiracy. So, why is that not a helpful hypothetical? Sure, Your Honor. So, I don't think that hypothetical aligns here because here they set up this framework, the framework of the 2005 agreement, the 2007 agreement. In those parts of the information I referenced, there's a description of the meetings that took place. So, the mechanism, the whole plan was set up by 2007. And then what they did after that was continue to process bank transactions, sort of the later part of the conspiracy. So, yes, it does extend. But it all goes back to it all depends on the framework. It may depend. The framework may be necessary but not sufficient. They had to keep doing bad stuff in 08, 09, 10, 11, et cetera, et cetera. And if they hadn't kept doing it, then, you know, the conspiracy wouldn't have existed in those years. True, but the conspiracy also wouldn't have existed in those years but for the stuff they did at the beginning to set the whole thing up. I agree with you about it being a but-for cause. But but-for is not always the cause that matters. And the text here is arise from, arising from. So, how do we know whether necessary but not sufficient is good enough to qualify as arising from? Because let's go to this court's definition, any causal connection. It's a deliberately broad phrase. And we cataloged every circuit in our brief that says that. So, they could have chose something much more specific. For example, in the eligibility provision, the provision about what claims qualify, they used language that very specifically links designated as a state sponsor of terrorism at the time the acts described occurred. That's not what they used in the funding provision. And that's a choice. So, we're asking the court to honor that distinction, that choice that Congress made. Ms. Berman, if I can go back to the first question that Judge Walker asked about whether you think that the charge conduct here is an IEPA violation or a related conspiracy. I mean, it seems from the plaintiff's complaint that it understood at least the IEPA violations here to be, you know, like in the first part of the statute, right, a violation of IEPA, not related conspiracy. And I think this actually might matter for a number of reasons. So, first, I just, it seems that your complaint understands it differently from what you just said in argument. So, Your Honor, I mean, I think we described it accurately in our complaint. We pointed back to the information which charges two counts of conspiracy. But, you know, the government itself does say there were IEPA violations, but they chose to charge a conspiracy. The conspiracy happened when North Korea was a state sponsor of terrorism. So, my question, though, is, is the IEPA conspiracy in the related conspiracy bucket or is it just in the IEPA violation? We think it's in the statute. We think it's in the related part of the statute. And I'm not sure it should matter, Your Honor. And maybe this gets to my second point that I did want to also address today. First, I think this characterization is important. So, I mean, in the information in the statement of offenses, it talks about an IEPA conspiracy. It cites to the IEPA conspiracy provision. I think it's 50 U.S.C. 1705. So, why wouldn't that be an IEPA violation, not a related conspiracy? Well, we have both here, Your Honor, basically. But what the government chose to charge and what the proceeds were paid for. So, I want to take you back to the provision here. You know, all these phrases we're talking about go back to describe the proceeds, the funds forfeited or paid. So, those funds all arise from the conspiracy here. And I think that's important, Your Honor. So, you know, the question. My question is, do they arise from a violation of any license, order, regulation, or prohibition issued under IEPA? Or do they arise from a related criminal conspiracy? I think they arise from a related conspiracy because they were paid because these defendants pled guilty to conspiracy. That's why the proceeds were paid. We do agree with the government on what it says in the information and in its decision document that there were IEPA violations here. But the funds were paid for a conspiracy that was charged and pled guilty to. So, normally in criminal conspiracy cases where the government has demonstrated an agreement, et cetera, the defendant remains a part of the conspiracy until he, she, or it takes some action to withdraw. So, here the statute, I thought, may anticipate that when it defines who is a state sponsor of terrorism. When it says, refers to repeatedly provided support for acts of international terrorism. So, in regard to Judge Rao's question, is part of the answer that it could be both? That it could be a violation of IEPA? But then these other actions, supportive however you want to describe them, fall within the definition that the statute provides as to who is a state sponsor. And so, you don't need to take an either or approach. I mean, that is the question, whether the statute forces you to take that approach. I think I agree, Your Honor, that we don't need to take an either or approach. There were IEPA violations here. They weren't charged. There were also the conspiracy. But I don't think that, you know, defining who is a state sponsor of terrorism, that is a separate decision that Congress has described in a certain way. And then in this funding provision, it said the question is, do the proceeds arise from doing business with, or acting on behalf of, or the actions of a state sponsor of terrorism? And so, Your Honor, we think, you know, we go back to that core definition. Is there any causal connection? Is it an ingredient? And we have that here. It's at the beginning. It's at the end when these charges were brought. North Korea was a state sponsor of terrorism when the proceeds were paid. Ms. Berman, so, okay, maybe we should go back to the statutory question about whether state sponsor of terrorism applies, you know, what does that apply to? Does it apply to related criminal conspiracy scheme or other federal offense? Does it apply to IEPA, TWE, and the related conspiracy scheme or other federal offense? Well, Your Honor, our, you know, we. Your position is that it only applies to other federal offense. I think that is a very unnatural reading of the statute, I will just say. So I'm not sure how grammatically we could apply state sponsor of terrorism only to other federal offense. Well, Your Honor, it follows other federal offense with no comma. So the normal rules of grammar is that when you have a qualifying phrase that follows a noun with no comma, it modifies that noun and only that noun. That's the last antecedent canon. That's the typical rule. It doesn't make a lot of sense with or any related criminal conspiracy scheme, right? Or other federal offense arising from seems to be a part of this whole last clause. Well, Your Honor, first I want to point out that that's not the government's argument. The government's argument is that you have to take that last phrase and take it the whole way back to this 94-word tradition. I'm trying to figure out the best meaning of the statute, which is what we have to do, right? Irrespective of what the parties argue, we need to figure out what Congress did. Absolutely, Your Honor. The best interpretation of the statute. So, Your Honor, but still the last antecedent rule is the typical rule. You know, this court has said that that is the normal reading of something. You just apply it to the thing before. Congress could so easily have put a comma between federal offense and arising from. There are 12 commas in this provision. It didn't choose to put one there. We don't think this is the kind of case where the court supplied the serious qualifier canon. There it's applied it to, you know, short phrases, two words, like in Facebook, store or possess. And I note the government really doesn't try to draw parallels to Facebook in its brief here, even though the district court primarily relied on it. Or it applies it where there are special reasons to quote one of the cases, such as the purpose. And here the purpose of the statute is undermined by the government's very narrow interpretation. Right. Well, I mean, you know, this is a provision to channel money. So we have to just figure out, you know, what money is being channeled. But so, okay. Just assume for a minute that I think state sponsor of terrorism applies to the whole last clause, related criminal conspiracy scheme or other federal offense, but not to the IEPA and TWEA violations. So then, Your Honor, your prior question becomes more important because one way to look at this case is we do. This is why I think this is important. Okay. Sorry. My apologies, Your Honor, if I didn't file that entirely before. So the government is clear in the decision. It keeps saying violations of IEPA, even though what it charged is conspiracy. So there's no question there are IEPA violations here. IEPA violations. My question is they've charged an IEPA conspiracy under the IEPA statute. They haven't used the general federal conspiracy statute. They've used the IEPA conspiracy provision, 1705. That's correct, Your Honor. So in that instance, is an IEPA conspiracy violation a violation of IEPA? It is, Your Honor. Or is it a violation of a related conspiracy? So, Your Honor, conspiring to violate IEPA is itself an IEPA violation. We had agreed with the government that we were in related conspiracy land because this is a conspiracy. It's related to an IEPA violation, and it was charged as a conspiracy. I think you can also look at this as a set of straight-up IEPA violations in addition to a conspiracy. Even if the parties agree on how to characterize it, it seems to me that what was charged and what was agreed to is a legal question and not necessarily one the parties can stipulate to. I agree with that, Your Honor. We thought it was important that the information charged conspiracy, and the conspiracy here happened when North Korea was a state sponsor of terrorism, but there were IEPA violations as well. The information makes that clear. I agree that we could not issue a definitive binding holding that misinterprets a statute. We shouldn't do that when we know it's a misinterpretation of a statute. But I think it's the burden of the appellant to make a winning argument. If the appellant doesn't make a winning argument, that should be affirmed in the district court. We could say it's an affirm because a potentially winning argument was forfeited in the briefing, and that would leave the possibility of a future litigant to persuade a court to interpret the statute the way that maybe we think the statute should be interpreted. But I'm not sure that we have a – it's arguable whether we even can, but I definitely don't think we have a duty to make a winning argument for an appellant that the appellant didn't make. By the way, you might still win on the – because it started in 2007, everything after that counts. So you might still win, but on the dialogue you were having with Judge Rowland, tell me – this is your opportunity to tell me why I'm wrong that if the appellant hasn't made an argument, we don't have a duty to make that argument for you. Your Honor, we think the better argument, and the argument we made in our brief, is that that last phrase arising from only modifies other federal offense. That's the thing right before it. This court recently said in U.S. v. Little, the normal reading is you just apply it to the thing before it. We very strenuously argue this is not a case for the exception. Where the court makes an exception, it's usually because to not do so would be contrary to Congress's purpose. We have here the amici who have come in and told the court what their purpose was, and it was to identify multiple broad streams of funding. The government's argument does the opposite. It narrows the streams of funding to a trickle here. So I think we have – we think that phrase just modifies other federal offense. I recognize this court could make a – draw a different line in the statute, and I think if the court does so, it can articulate that. And we have laid out all the possibilities in the briefing here, and I think the court can reach the conclusion that feels appropriate. But we do think just apply the normal last antecedent rule, and it goes to other federal offense. And that's what the drafters of this provision have told the court they were trying to do. And, Your Honor, I know that I'm over my time here, so I just want to briefly say, you know, an important thing is I think that the fact that the government has to twist itself into a pretzel to explain how it divided up the proceeds here, that it used this, you know, took the bank transactions, came up with this proxy approach suggested by an accountant where they admitted themselves, and this is at Joint Appendix 397 to 98. We would not be able to break down to the SST time period. I think that's really strong evidence that they're not doing what Congress intended here. This was supposed to be a yes-no arising from is a very broad phrase. And for those reasons, Your Honor, we would ask that the court reverse and correct the misinterpretation and misapplication of the statute for the sake not just of these plaintiffs, but the 20,000 terrorism victims who are awaiting recovery of their judgments. Thank you. We'll give you some time, Honor. Thank you. Good morning, Your Honors. I'm Josh Koppel for the Department of Justice. May it please the court. Congress created the VSST Fund to compensate American victims of state-sponsored terrorism, and it made the logical choice to fund that program with the penalties and forfeitures paid to the United States for certain specified offenses, if and only if those offenses involved state sponsors of terrorism. This is a case in which the series qualifier canon clearly applies. Starting with the text, we have a list of five offenses, IEPA, TWAIA, and related conspiracies, schemes, and other federal offenses, followed by a modifying clause. And the Supreme Court has said that where the modifying clause is just as applicable to all of the preceding items in the list as to the last, the natural construction of the language demands applying the qualifying clause to all the preceding items. Just looking at the way this provision is punctuated and the way the last clause begins with, or any related criminal conspiracy, it seems very unnatural to read the state sponsor of terrorism requirement as going back to the IEPA and TWAIA violations. I think that it's no more unnatural than was the case in Puerto Rico Railway, for example. In that case, the court was interpreting a statute that similarly had multiple clauses and subclauses. Nonetheless, the Supreme Court applied the series qualifier canon. Here, too, there's no reason to think – certainly the qualifier clause could be applied to IEPA violations just as easily as to related conspiracies or related other federal offenses. And there's no reason, no discernible reason consistent with the purpose of the statute to think that Congress would have wanted to differentiate between IEPA offenses and related conspiracies and IEPA-related other federal offenses such that only some of those offenses have to have a connection to state sponsors of terrorism, but others do not. There's no reason to believe. I mean, that's not – I mean, we're trying to figure out what Congress actually said and did. I mean, who knows why they make any decision. This is just like a channeling provision, right? Maybe they wanted all of the IEPA funds to go into this fund. I mean, like I don't know why we would – I mean, are you suggesting it would be absurd for all the IEPA funds to go into this, like all the IEPA proceeds? Well, the Supreme Court used a similar reasoning. It said there was no reason consistent with any discernible purpose of the statute in United States v. Bass, and that was a reason to use the series qualifier canon. The other reason could be that they want money to go into this fund for, you know, victims of state-sponsored terrorism. Sure. There's absolutely a story to tell about why Congress might want the penalties from all of these offenses to go to the VSST fund regardless of whether they involve a state-sponsored terrorism. But what there's no explanation for is why Congress would say if it's an IEPA-related other federal offense, it has to have a connection to state-sponsored terrorism. But if it's an IEPA-related scheme, it does not. And it is unworkable because there's no way to differentiate. It's not a question about absurdity. I mean, maybe one possibility could be that IEPA and TWAIA violations, like direct violations of those provisions, involve, you know, bad state actors, and maybe a related criminal conspiracy scheme or other federal offense has to be more closely tied to state-sponsored terrorism. I mean, I don't know. It could be something in the nature of IEPA and TWAIA versus sort of a very – it has to involve a state-sponsored terrorism. But, yeah. So I've got two responses. The first is that plaintiffs want to differentiate also other federal offenses from schemes. And there's no way to even – Trying to find the best meaning of the statement. Yeah. There's no way to even know what is an other federal offense and what is a scheme because scheme doesn't have a concrete definition.  But furthermore, Congress would not have thought that there's any closer connection to state-sponsored terrorism between IEPA violations and IEPA-related conspiracies. Just to give an example, there are sanctions under IEPA against Russia. Russia is not a designated state-sponsored terrorism. There are tariffs imposed on Canada, Mexico, China due to the flow of opioids across the border. Those tariffs are imposed under the President's authority pursuant to IEPA. But let's not get into that argument. That's a completely different statutory scheme. Well, according to – What we're trying to focus on here is the precise language. We have the amici brief that says, here's what we intended. And for 10 years, Congress had been trying to figure out how to provide some relief and it came up with this scheme. All right? So Judge Rao has asked a question, it seems to me, that has to be answered in the context of this statute and its purpose. And you haven't denied that this is some accountant's theory, which is very nice, but the argument is made that Congress never indicated in any way that it intended the type of formula that the government is applying. So as I understand, and I'm putting words into my colleagues now, the judge is asking, but wait a minute, you know, there is this listing, and why shouldn't we think of the listing as sort of independent statements and then this catch-all about and any related? And so the response is, well, this arising under covers everything. So can you focus on that and not some tariff theory here? Well, I want to be clear because under plaintiff's theory, if someone smuggles goods across the Canadian border without paying the tariffs, that is a violation of a regulation issued under IEPA. And if that property is forfeited, it would be put in the VSST fund. But this is in the context of an IEPA conspiracy, and there's no argument that conspiracy, as a criminal matter, is to be viewed differently here in the IEPA context than in the usual context that we deal with the conspiracy. So similarly, if someone were charged with conspiring to smuggle goods across the border, for example, you know, again, the same question would arise. And there's no reason to think that Congress would have wanted to differentiate between an individual IEPA violation and a conspiracy to violate IEPA. I think this does get to the question that Judge Rao was asking of opposing counsel. There's no reason to think that, you know, that Congress would have wanted to differentiate such that if someone is charged with an individual IEPA violation, it does not need a connection to state-sponsored terrorism. But if someone is charged with a conspiracy to commit IEPA, to violate IEPA, that it does need a state-sponsored terrorism connection. Let me ask you the question I also asked your colleague on the other side, which is, is the IEPA conspiracy here a violation of IEPA, the first part of the statute, the first, you know, clause, arguably, or is it part of a related criminal conspiracy? I think it is a related conspiracy. I think that it isn't.  I think that when Congress spoke to an IEPA-related conspiracy, it was addressing exactly this, a conspiracy to violate IEPA. It's not related conspiracy. It is an IEPA conspiracy. There could be related conspiracies under, arguably, the bank fraud conspiracy is related to the IEPA. You know, there's like a relationship, but here the government charged under 50, whatever, 1705, which is the specific IEPA conspiracy. Why isn't that a violation of IEPA under the first clause? Which obviously matters if, for instance, I mean, assuming I think that state-sponsored terrorism doesn't apply to that. Yeah, I think that, I think it's a tough question. I, you know, I think that there's, the statute is certainly not clear on this point. I do think that... Well, I'm not asking about the statute. I'm asking about what was charged here and like how it, I guess, how it matches up to the statute. Yeah, I mean, what was charged was certainly a conspiracy under the IEPA statute itself, as Your Honor pointed out. The question is how that matches up to the statute. And I think that's, the Congress was not clear on that point, whether that is an IEPA-related conspiracy or an IEPA violation itself. But I think that the fact that Congress was not clear just highlights the fact that Congress did not think that there would be this distinction between an IEPA-related conspiracy and an IEPA violation. So, I think that, I think the better reading probably is that this is, does fall within the conspiracy framework. And so, all this court needs to do then in order to affirm for the government, affirm the decision below rule for the government is to hold that the arising from state-sponsored terrorism clause applies at least to related conspiracies, schemes, and other federal offenses. And the court then wouldn't need to address whether it also applies to IEPA violations and TRIA violations. But in any event, we do think that the serious qualifier canon is clearly applicable here. It applies to those things and also that what was led to here is a related conspiracy, not an IEPA violation. That's right. So, I mean, that would also be. That's right. If the court. Determine that. Yes. Of course, if the court thinks that it's easier, the court could also simply say, the modifying clause applies to each of the five preceding offenses. And in that case, it doesn't matter whether what was charged here was an IEPA violation or an IEPA related conspiracy. So, that seems like I know that's how you. What your brief says is the best way to interpret it. I think I heard Judge Rauta suggest that she's skeptical of that. I'm skeptical of it too. I haven't diagrammed sentences since grade school, but I took a crack at this one. Do you have the statute in front of you?  Mr. Koppel might be too young to remember sentence diagramming. I don't think they do that anymore in school. They don't. But I'm happy to try. I learned a lot in preparing for this case about sentence diagramming. So, I'm at the first arising from phrase. As a criminal penalty or fine arising from. So, arising from then requires an object or more than one object. Arising from what? What do you think is the object or objects that answer the question arising from what? I think a violation or any related conspiracy scheme, other federal offense. I think the exact same thing, but I'm not sure this is good for your argument. Okay. Because I think that helps me realize that the final arising from language follows the second of the two objects. And so, therefore, or the second, I guess you would say it follows the third, the second, third, and fourth objects. And so, likely modifies the second, third, and fourth objects. And not the violation of either a TWA object. And that is especially, I think, made clear from the comma that follows the first object. So, you've got arising from, object one, comma, or object two. And then without a comma at the end of object two, which is really objects two, three, and four. You've got that final arising from language. So, does that, do you see why I think it can't go back to AIPA and TWA? I do. And I don't think, so, it doesn't matter that the qualifying clause appears at the end of the sentence rather than the beginning. Right, you can have a post-positive modifier that applies to each of the preceding items in the list. Just like you can have a pre-positive modifier that applies to each of the following items in a list. So, the second point that you made was this question about the comma. I agree, the answer would be easy if there were an additional comma before the second arising from, after other federal offense. It would be easy if there were a comma. But the absence of a comma, the Supreme Court has said in United States v. Bass, does not signal anything. Because grammarians disagree about whether, grammarians agree, actually, that the inclusion of a comma is discretionary. So, I think sometimes a comma is not just positive. Sometimes it is. I think there's an old John Marshall piracy opinion where it says it's either a capital offense or not a capital offense depending on whether there's a comma. And so, the presence of a comma is the difference between life and death. But here I wasn't actually asking about the lack of a comma that you were describing. I was emphasizing the presence of the comma right after TWIA. So, you've got the first arising from, and then you've got a violation. That's an object. And then a comma following that, which then leads to conspiracy scheme other federal offense. It's that second grouping after the comma that is there that is modified by the final arising from phrase. So, I point you to Puerto Rico v. Moore. And maybe you don't have the statutory text that was involved in that case before you. But I'll read it. It provided for jurisdiction of the district court of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign state or states, comma, or citizens of a state territory or district of the United States, no comma, not domiciled in Puerto Rico. So, it was the same. It was basically foreign citizens, comma, or U.S. citizens, no comma, not domiciled in Puerto Rico. And the Supreme Court held that not domiciled in Puerto Rico applied both to the U.S. citizens and the foreign citizens. It's the exact same structure here. I do remember that case. I did not remember the exact wording as you were reading it. But I looked at it. I think it's helpful to you. I'm not sure it's smoking gun evidence that you win, but I do think that it's helpful to you. If it's okay, I was going to switch to the second argument that the appellants make. If I can just really briefly just make one point before we do that, I think that you don't have to only look at the text here. There are numerous other tools of statutory interpretation, and I do think they all point in the favor of the government here. So, for example, the award to informers who report, who identify property held in the United States by state sponsors of terrorism, they get an award. If they identify property held by another sanctioned state, there's no award. I think that's an indication. There's also congressional ratification here. Congress specifically amended this funding provision after it knew the Department of Justice's longstanding interpretation, and it didn't reject that interpretation. Can I just ask you a practical question just about this, which is what is the universe of IEPA funds that would go into this if there had to be no connection to state-sponsored terrorism? Very large. I think on the order of billions of dollars. And was that true at the time the statute was enacted as well as today, or is it that the use of IEPA has expanded, so now includes a lot more proceeds? I'm just asking as a practical matter why the government might care about this in terms of just sort of dollars and cents in terms of where the money gets channeled. I think that it always was. I think that there have – I don't know.  Exactly. Yeah, but it – It was a large pool of IEPA money at the time this was – It was. Sanctions on Russia, there have been longstanding sanctions on, I think, Ethiopia due to humanitarian violations, Nicaragua similarly. None of those countries, Burma, none of those countries have ever been designated state sponsors of terrorism. So there was always a large category of IEPA violations. Okay, and so it's possible Congress either wanted a large category of money to go into this fund or it didn't. But that category has been – like it's been a large amount of money since then. It is large, yes. But again, even if Congress intended this large amount of money to go into the fund, that wouldn't jive then with what Congress did later in the statute in saying IEPA-related other federal offenses have to have a connection to state sponsors of terrorism. Right? So it's not about a question – It's possible, I'm just speculating, that state sponsor of terrorism was designed to cabin this very – you know, it could be very capacious category when they use the word scheme-related. And so the last category has to have a nexus to state sponsor of terrorism but not these other statutes, which they kind of have a sense of what's included there. I'm not sure it is because, you know, the related phrase, you know, does limit what comes later. Certainly these are IEPA-related other federal offenses. I think what Congress was trying to avoid here was a situation like that here where the defendant is charged with bank fraud because they concealed the transactions so that the banks – the intermediary banks didn't know they were doing business with a sanctioned state. Right? So even if there had been no IEPA charge here, just a bank fraud charge, Congress didn't want that money to escape this provision. Right? So that's kind of the related other federal offense. But all along, Congress only envisioned that any of these penalties would only be deposited in the VSST fund if they involved a state sponsor of terrorism. I do want to address – My understanding as I studied this case was that taking the appellant's argument would mean that criminal penalties and fines arising from any IEPA violation would go into this fund, but not that any money raised from IEPA rules would go into this fund. Because I thought that if IEPA is used to impose tariff and that tariff then leads to raising money from the tariffs from trade across borders, I wouldn't have thought that that money is the product of a criminal penalty or fine. You're certainly right. The point that I was making earlier was that if someone is caught smuggling goods across the Canadian border and that property is forfeited, under plaintiff's interpretation, that's a forfeiture that results from a violation. Of a regulation issued under IEPA. And that would be deposited in the VSST fund. Even though obviously smuggling goods across the border from Canada has no connection to state sponsors of terrorism. Okay. I got that. And I'm grateful for the confirmation on that. On their second argument, which is that if a conspiracy begins while the country is a state sponsor of terrorism, then for however long the conspiracy lasts, the money goes into this fund, even if that country is dropped as a state sponsor of terrorism. I think there's force to that argument here. And one analogy that I thought of is if one section of a stadium starts a wave at a sports game, I think the rest of the stadium's continuation of that wave could be said to arise from section one's creation of the wave. Even though it does take independent actions in sections two, three, four, five, or six for that wave to continue as long as it did. I think here, a conspiracy that began when North Korea was a state sponsor of terrorism, as long as it's that same conspiracy that's continuing, it seems like it's the wave that's continuing and arose from 2007. I think that the distinction between the wave and the North Korean sanctions, I think that you do have to think about the temporal element. And a violation or transactions that occur at a time that North Korea was not a designated state sponsor of terrorism just don't arise from doing business with a state sponsor of terrorism. At the time those transactions were made, the business was done with a sanctioned state, but not a state sponsor of terrorism. Would you agree that they originate from a conspiracy that began with a state sponsor of terrorism? I don't know that – I don't think my answer would change either way. Certainly, the transactions at the time did not involve a state sponsor of terrorism. If British American Tobacco or, say, a defendant had engaged in five transactions with a sanctioned state, and after the first two, the state was designated a state sponsor of terrorism. If this is charged as five independent AIPA violations, penalties from the first two violations would not go to the VSST fund. They don't involve a state sponsor of terrorism. Penalties from the last three would go to the VSST fund. There's no reason to think that the rule should be any different if the defendant is charged instead with a conspiracy to violate IEPA. No, I mean it's not at all unusual for the decision about charging to have quite an effect. I mean we just had a criminal appeal where they charged one crime, and they probably could have charged two, three, four, five crimes, and it would have definitely increased the statutory maximum. Here, you're right. I mean you could charge your hypothetical as five crimes, or you could charge it as one. And whether you do or don't is going to have an effect in many ways, and it may have an effect on whether the money goes into the fund or not. It would certainly have an effect on the government's burden of proof in the criminal charge. There are reasons that a prosecutor might want to charge something one way versus another. Conspiracy to violate IEPA, IEPA, conspiracy to commit bank fraud. But there's no reason to think that Congress would have wanted to tie funding of the VSST fund to the prosecutor's decision, which is made for a completely different purpose. And nor should the prosecutor be thinking, well, do I want this money to go to the VSST fund or do I want it to go to the Crime Victims Fund to help these other victims when he makes that charging decision? Fair enough. Let me ask you, what is a clearer way that you could have written this statute to support your interpretation about the temporal issues? I will qualify this by saying I don't ascribe to the if it could have been written clearer, then it doesn't mean the other thing canon. But it can be just a helpful thought exercise. Yeah, I think it's somewhat difficult because, you know, you're going to end up with lots of factual, different factual situations. So I think it's difficult to frame the statute in terms of, you know, to draft a clearer statute. I think that maybe Congress could have put in something about individual transactions. But again, you know, I don't want to speculate about what you know how that might play out differently in different factual situations. So I think it's I think it's difficult. I think it's an it's an it's a candid answer to my question. I think it's it's it's revealing, though, it's not good for you because the the absence of the word transactions in the actual test is part of what's giving me a lot of trouble with with your argument. I don't think of arising from being kind of a phrase that captures, you know, a distinction between the transactions that follow the arising. Well, I want to focus on what actually follows the words arising from. So they're arising from the actions of we're doing business with or acting on behalf of a state sponsor of terrorism. And so there is a connection to the business that is done. The acting on behalf of right. When does that business happen? It happens when you engage in the transaction acting on behalf. Right. Similarly. So I think that there is a statutory indication that what Congress was focusing on was not just kind of involving a state sponsor of terrorism or touching in any way, but rather arising from doing business with, you know, when that transaction is done. And when British American tobacco. Participate in this conspiracy in 2009, so this is after the designation of North Korea. It was not then doing business with a state sponsor of terrorism. And so, you know, we would submit that in that case, the penalties allocable to that portion of the offense should not be deposited in the VSST fund. Instead, they should be deposited in the Crime Victims Fund, where they are used to support victims of other crimes not involving state sponsor of terrorism. Do my colleagues have any other questions? We ask that the Court affirm the decision below. Thank you. Justice Berman, we'll give you two minutes. Thank you, Your Honors. First, just to clarify what our arguments were, I did want to point the Court back to page 2 of our opening briefer. We say that that proceeds arise from AIPA violations and related criminal conspiracies. So, you know, I think it's important here that, Your Honor, the doing business with, that my friend was just talking about, the doing business with North Korea was at the front end. Setting up this framework, these agreements, that all happened at the front end. The individual transactions that followed, some of them may have involved North Korean entities, some may not have. The laundering, you know, it's not the transactions. Congress could have used violative acts, the phrase you see throughout the decision memo and in the government's internal correspondence. It did not do that here. I also wanted to touch on Puerto Rico Railway, this case from 1920, and old certainly doesn't mean it's bad. But I think what's really important there, Your Honor, is that the Court said there are special reasons for applying the series qualifier canon. And those special reasons were Congress's purpose. It wanted to dial back the jurisdiction of the Puerto Rico District Court. Here, the special purpose Congress had in enacting the act was to find multiple broad streams of funding. Their interpretation undermines that special purpose. Second, Your Honor, this is a funding provision, as Judge Rao said. There's nothing absurd about drawing funds from bad state actors that may or may not be state sponsors of terrorism to fund the victims fund, to fund victims of state-sponsored terrorism. That's what Congress thought it was doing. And we know that from, for example, the Congressional Budget Office reports on the Burma bills, the China bill, where they said sanctioning these countries is going to add to the victims fund. That wouldn't be true under the government's interpretation. Ms. Bowman, can you just briefly address the government's argument that this is a longstanding interpretation and that Congress has effectively ratified it by not changing it over time? Your Honor, there's a lot of case law from this circuit and the Supreme Court saying that ratification arguments are always, to put it colloquially, weak sauce. But even setting that aside, nobody knew what they were doing here. There's no indication that Congress had any idea how funds were being divided from cases. Those decision memorandums are not published. It was only last year in 2024 that the website, the victims fund website, even identified the specific cases and the breakouts from them. So nobody knew what the government was doing here, certainly not Congress. You go to page two of your brief and can you say again what it says? Sure. We said that that proceeds arise from AIPA violations and related criminal conspiracies or schemes. And I draw you to that because I don't think it really matters which the court considers this to be here. Even if we're talking about AIPA violations themselves, they all arise from doing business with North Korea, setting up this framework, this conspiracy back by 2007 when it was a state sponsor of terrorism. The line you quoted reads as you quoted it. The top of the page says what you don't want it to say. The top of the page says an issue here is whether under this provision proceeds paid to the government, a settlement of long running conspiracy and scheme by BAT to violate AIPA and commit bank fraud. So I think the line you quoted is helpful. I'm not sure it's enough, but I'll think on it. Well, Your Honor, I think for the purpose of our timing argument, at least, it doesn't matter which one. And on the broader interpretation argument, our point is that we've never tried to segment out conspiracies from the AIPA violations. We do think the most natural reading is just apply the last antecedent canon because that's consistent with what the amici have told us Congress was trying to do here. Thank you so much for your time, Your Honors. Thank you.
judges: Rao; Walker; Rogers